# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

S<small>TEVEN</small> S<small>CHMIDTKE</small>

           Plaintiff,

v.

B<small>RIDGMAN</small> P<small>UBLIC</small> S<small>CHOOLS</small>; S<small>HANE</small> P<small>ETERS</small>, Superintendent; and K<small>EN</small> S<small>CHMALTZ</small>, Athletic Director,

           Defendants.

Case No.

HON.

**COMPLAINT**

JURY TRIAL DEMANDED

---

Daren A. Wiseley (P85220)
W<small>ISELEY</small> L<small>AW</small>, PLLC
*Attorney for Plaintiff*
41 ½ E. Bacon St.
Hillsdale, MI 49242
517-234-4020
dwise@defendyourrights.law

---

*There is no other pending or resolved civil action arising out of the transactions or occurrences alleged in this complaint.*

**NOW COMES** the Plaintiff, **STEVEN SCHMIDTKE**, by and through his attorney, Daren A. Wiseley, and together bring this Complaint against the above-named Defendants, their employees, agents, and successors in office. Plaintiff alleges the following facts in support of this complaint herein based on information and belief:

1

## THE PARTIES

1. Plaintiff STEVEN SCHMIDTKE is a retired Sergeant from the Berrien County Sherriff Department, and at all times relevant to this matter, has resided in Stevensville, Berrien County, Michigan.

2. Plaintiff is an involved parent whose sons, TYLER and A.S., were a senior and freshman, respectively, at BRIDGMAN PUBLIC SCHOOLS at all relevant times for purposes of this Complaint.

3. Defendant BRIDGMAN PUBLIC SCHOOLS ("BRIDGMAN") is a public school district, operating a public-school system in Berrien County, Michigan, and its office is located at 9964 Gast Road Bridgman, MI 49106. BRIDGMAN is the body responsible for managing, adopting, implementing, and enforcing all school policies and the student code of conduct.

4. Defendant SHANE PETERS is the superintendent of Bridgman Public Schools and was and at all times mentioned herein was acting under color of law, in his individual and official capacities, and within the course and scope of his employment. He is being sued in his individual and official capacities.

5. Defendant KEN SCHMALTZ is the athletic director of Bridgman High School and was and at all times mentioned herein was acting under color of law, in his individual and official capacities, and within the course and scope of his employment. He is being sued in his individual and official capacities.

## JURISDICTION AND VENUE

6. This action arises under the Constitution and laws of the United States and of the State of Michigan. Jurisdiction is conferred on this court pursuant to Article III of the United

2

States Constitution; 28 U.S.C. § 1331; and 42 U.S.C. § 1983, 1985, and 1988.

7. This Court has supplemental jurisdiction regarding the remaining state claims pursuant to 28 U.S.C. § 1367.

8. Plaintiff's claims for damages are authorized under 42 U.S.C. § 1983, and by the general legal and equitable powers of this court.

9. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in Berrien County, located in the Western District of Michigan.

## FACTUAL BACKGROUND

10. Plaintiff incorporates all preceding paragraphs by reference as if fully restated herein.

11. Plaintiff has always followed and attended both of his sons' athletic activities from grade school through high school to support them. His involvement includes coaching and attending every game they have played in, prior to the events leading to this Complaint.

12. On October 22, 2021, Plaintiff drove to Marcellus High School to attend a high school football game in which his son TYLER was playing for Bridgman High School.

13. After the high school football game ended, Plaintiff was exiting the premises, and approximately 75 yards away near the exit gate ramp, he noticed his ex-wife (LORI) and her husband (TERRY) staring at him from a distance away, which was dark outside at the time.

14. TERRY was waving his hands at Plaintiff, making some kind of obscene gesture towards him. Plaintiff noticed TERRY and LORI were leaving the stadium, so he waited for them to exit, and subsequently, then left the football stadium himself to drive back home.

15. October 27, 2021, Plaintiff received several hang up calls from Bridgman Athletic director Ken SCHMALTZ who woke him up in the morning from sleeping between

3

8:39-8:51am. Defendant SCHMALTZ was very rude towards Plaintiff, stating that Plaintiff "had flipped off his [Plaintiff's] ex-wife at the Marcellus High School football game on October 22, 2021". Defendant SCHMALTZ tone of voice on the telephone sounded threating and indicated that Plaintiff could no longer attend sporting events or/ extra-curricular activities held at schools for his two children. Before Plaintiff could respond, Defendant SCHMALTZ rudely hung up the telephone, ending the call.

16. On October 28, 2021, Plaintiff's oldest son, TYLER, had the last football game of his varsity career scheduled. The game was a home game.

17. Plaintiff had planned to take photographs of the teams and players during the games, as he had done before every year, and especially on this date, because this was the last game.

18. Plaintiff had also purchased footballs for the Bridgman team to have them signed by the players to display in the trophy cases at Bridgman High School to showcase their winning season.

19. Much to Plaintiff's devastation, he was told by Defendant PETERS **he could not attend his son's very last home football game.**

20. On October 30, 2021, Plaintiff received a trespass notice (hereinafter, "TRESPASS") from Defendant PETERS. The TRESPASS was dated October 27, 2021 and stated that Plaintiff "[m]ay not enter any extracurricular activity where Bridgman Public Schools and/or staff are participating in said extra-curricular activity." **(EX. 1)**

21. The TRESPASS purported to be issued pursuant to District Policy 9150 for "recent actions" on October 22, 2021. The correspondence made no reference to any specific act(s) that Plaintiff took to warrant exclusion from all Bridgman extracurricular activities, nor did

4

it provide any facts to implicate him under the stated policy. *Id.*

22. Plaintiff was completely unaware of District Policy 9150, nor was he provided the policy or any other school policies from BRIDGMAN.

23. TYLER had football honors night on November 9, 2021, that he was unable to attend due to a work conflict. Plaintiff's ex-wife attended the awards night and received TYLER's football awards.

24. Plaintiff wanted his own copies of the awards to display in his home. Defendant PETERS refused to provide Plaintiff with copies. On November 10, 2021, Mr. PETERS advised Plaintiff that "there are no duplicate copies of the football awards available."

25. Plaintiff continued his attempt to receive a copy of his son's awards. On November 12, 2021, Bridgman Football Coach VELDMAN responded that, "the awards are created by the high school office staff. So they would be the ones to contact as they have the programs that make the certificates." Eventually, Bridgman High School Principal HEATH provided Plaintiff with the copies.

26. Plaintiff attempted to contact Defendant PETERS multiple times regarding the TRESPASS via both email and phone, to which he did not receive a response. He also did not receive a copy of the District Policy he was purported to have violated, nor any other district policies.

27. As a result of the TRESPASS, Plaintiff not only missed his TYLER's last home football game of his career, but also the entirety of his final track & field season.

28. As a result of the TRESPASS, Plaintiff also missed the entirety of A.S.'s basketball season.

29. While Plaintiff was allowed to attend TYLER's honors night for football in

5

November 2021, In March 2022, Defendant PETERS arbitrarily denied Plaintiff permission to attend A.S.'s honors night for basketball. **(EX. 2)**

30. After missing football and basketball, Plaintiff did not want to miss A.S.'s upcoming track season in Spring 2022 and contacted the undersigned counsel ("Counsel") in attempts to reach a resolution with Defendants that would allow Plaintiff the ability to watch his son's track meets. In April 2022, Counsel sent email correspondence to Defendant PETERS in that regard. **(EX. 3)**

31. Counsel then received return correspondence from Defendants' attorney, attached with a copy of Policy 9150, not until then had Plaintiff been able to view the policy he had supposedly violated.

32. After some correspondence back and forth, On May 1, 2022, notably when the school year was nearing its end, and therefore sporting events nearly completed for the year, Defendants finally offered to allow Plaintiff back to attend his son's final track meet, but only on the condition that he sign a full release of claims. Plaintiff declined.

33. In November 2022, Plaintiff sent an email to Defendant PETERS inquiring if the TRESPASS had been lifted, since it expired on October 27, 2022. However, Defendant PETERS refused to answer Plaintiff or otherwise indicate if the TRESPASS is indeed lifted.

34. Plaintiff's cherished moments that were missed attending and supporting his children in their high school sporting events is something that can never be replaced. The total denial of access to these events has damaged Plaintiff's reputation with the school, public, and community at large.

35. Since being denied access to his children's extracurricular activities and sporting events, Plaintiff has suffered from loss of sleep over the allegations, his health has

suffered because of the stress, and his damaged reputation has caused work lost. Furthermore, Defendants' actions have caused Plaintiff significant humiliation, embarrassment, and a sense of degradation, from being banned from his own children's extracurricular activities.

36. As a result of Defendants' actions, Plaintiff since has been experiencing emotional distress and severe anxiety. Plaintiff has had to see a physician regarding medical issues that have arisen as a result and been forced to be placed on medications by the physician. Plaintiff has seen his Physician regarding medical issues. Plaintiff has been placed on medications by physician regarding anxiety. The physician has also referred Plaintiff to a psychiatrist for treatment resulting from Defendants' actions.

## COUNT I
## 42 U.S.C. § 1983 – UNLAWFUL RESTRAINT ON THE FREEDOM OF SPEECH

37. Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.

38. As applied, the TRESPASS was an unlawful restriction on Mr. SCHMIDTKE's right to the freedom of speech as guaranteed by the First Amendment to the United States Constitution because it gave complete and unbridled discretion to BRIDGMAN administrators to determine when Mr. SCHMIDTKE can attend his children's extracurricular activities.

39. As applied, the TRESPASS was not narrowly tailored and does not serve a significant government interest.

40. Defendants acted with deliberate indifference and reckless disregard for Mr. SCHMIDTKE's First Amendment rights.

41. The policy statements, regulations, or decisions adopted and promulgated by the Defendants were the moving force behind the violations of Mr. SCHMIDTKE's First

Amendment Rights.

42. Defendants' adverse and retaliatory actions caused Mr. SCHMIDTKE to suffer damages including actual damages, emotional distress, mental anguish, humiliation, and loss of dignity.

## COUNT II
## 42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATION

43. Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.

44. Mr. SCHMIDTKE engaged in constitutionally protected activities including, but not limited to, speaking freely, advocating ideas, and petitioning BRIDGMAN for redress of grievances.

45. Defendants took adverse actions against Mr. SCHMIDTKE including, but not limited to, causing a TRESPASS to be issued and maintained against him and enforcing the criminal trespass warning in an overly broad, arbitrary, and inconsistent manner.

46. By serving Mr. SCHMIDTKE with the TRESPASS, defendants impermissibly burdened his right to access information, attend public meetings, and participate in the political process as guaranteed by the First Amendment to the United States Constitution.

47. Defendants' issuance, maintenance, and enforcement of the TRESPASS would chill a person of ordinary firmness from continuing to engage in constitutionally protected activities.

48. Defendants' adverse actions were substantially motivated by Mr. SCHMIDTKE's exercise of constitutionally protected conduct.

49. Defendants acted with deliberate indifference and reckless disregard for Mr. SCHMIDTKE's Rights as protected by the First Amendment to the United States Constitution.

50.     The policy statements, regulations, or decisions adopted and promulgated by the Defendants were the moving force behind the violations of Mr. SCHMIDTKE's First Amendment Rights.

51.     Defendants' adverse and retaliatory actions caused Mr. SCHMIDTKE to suffer damages including actual damages, emotional distress, mental anguish, humiliation, and loss of dignity.

## COUNT III
## 42 U.S.C. § 1983 – VIOLATION OF DUE PROCESS OF LAW

52.     Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.

53.     Issuance of the TRESPASS deprived Mr. SCHMDITKE of the above rights without due process of law as guaranteed by the 14th Amendment to the United States Constitution.

54.     Mr. SCHMIDKTE has a liberty interest in directing the upbringing and education of his children. Plaintiff also has a property interest under state law in physical possession of her children, in making decisions concerning his childrens' education and upbringing pursuant to Michigan law.

55.     Defendants' actions in issuing, maintaining, and enforcing the TRESPASS against Mr. SCHMIDKTE infringed on his liberty and property interests and violated his right to procedural due process. Defendants failed to provide Mr. SCHMIDTKE with adequate notice or opportunity to contest the TRESPASS prior to or after its issuance.

56.     Defendants' actions in issuing, maintaining, and enforcing the TRESPASS against Mr. SCHMIDTKE infringed on his fundamental liberty interest and property interests and violated his right to substantive due process. Defendants lacked a rational justification related

to a legitimate government interest and acted arbitrarily in issuing, maintaining, and/or enforcing the TRESPASS against Mr. SCHMIDTKE.

57. As applied, the TRESPASS fails to adequately advise, notify, or inform Mr. SCHMIDTKE, the person subject to possible criminal prosecution for violation, of its requirements, and is therefore unconstitutionally vague in violation of the due process guarantee of the Fourteenth Amendment to the United States Constitution.

58. Defendants acted with deliberate indifference and reckless disregard for Mr. SCHMIDTKE's Due Process rights.

59. The policy statements, regulations, or decisions adopted and promulgated by the Defendants were the moving force behind the violations of Mr. SCHMIDTKE's Fourteenth Amendment Rights.

60. Defendants' actions caused Mr. SCHMIDTKE to suffer damages including actual damages, emotional distress, mental anguish, humiliation, loss of dignity.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

61. Plaintiff incorporates by reference all preceding paragraphs as if fully restated herein.

62. Defendant's conduct was intentional, and for the purposes of silencing, injuring, and depriving Mr. SCHMIDTKE of his constitutional rights, as described above.

63. Defendant's conduct as outlined above was extreme, outrageous, and of a character not to be tolerated by a civilized society.

64. Defendant's conduct as outlined above was for an ulterior motive or purpose.

65. Defendant's conduct resulted in severe and serious emotional distress.

66. As a direct or proximate result, Plaintiff sustained and continues to sustain

injuries, including but not limited to physical pain and suffering, mental anguish, embarrassment, humiliation, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, medical conditions, and other damages known and unknown.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff STEVEN SCHMIDTKE respectfully requests this Honorable Court to grant the following relief, jointly and several against all Defendants, for all of the reasons set forth in the complaint above:

a) Actual and compensatory damages, in an amount to be proven at trial, for the abuse and injuries Mr. SCHMIDTKE so wrongly suffered by Defendants' unlawful, unconstitutional, and unjustified conduct;

b) Punitive and exemplary damages to the extent allowed by law for Defendants' conduct by evil motive or intent, and/or reckless or callous indifference to Mr. SCHMIDTKE's rights;

c) Attorney's fees for Mr. SCHMIDTKE having to bring this action to vindicate his rights that he was deprived of, pursuant to 42 USC § 1988(b); and,

d) Interests, costs, and such other and further relief as is just and proper.

**I DECLARE THAT THE ABOVE STATEMENTS ARE TRUE TO THE BEST OF MY INFORMATION, KNOWLEDGE, AND BELIEF.**

*Steven R. Schmidtke*
ID sUzRjaGKPeQsptnQ3SveQLse

Steven Schmidtke
Plaintiff

                                                Respectfully Submitted,

December 7, 2022

                                                Daren A. Wiseley (P85220)
                                                Attorney for Steven Schmidtke
                                                WISELEY LAW, PLLC